IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

ADAN PEREZ, JR.                      §
     TDCJ-CID NO. 553093       §
v.                                   §              C.A. NO. C-11-035
                                     §
RICK THALER                          §

**MEMORANDUM AND RECOMMENDATION TO**
**GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is a state prisoner currently incarcerated at the McConnell Unit in

Beeville, Texas.  On February 11, 2011, he filed this pro se habeas corpus petition

pursuant to 28 U.S.C. § 2254, challenging his guilty plea.  (D.E. 1, 2).  Pending is

Respondent's motion for summary judgment.  (D.E. 12).  Petitioner filed a

response on June 7, 2011.  (D.E. 17).  For the reasons stated herein, it is

respectfully recommended that Respondent's motion for summary judgment be

granted, and that this habeas petition be dismissed.

## I.  JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the

inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson,

235 F.3d 959, 961-62 (5th Cir. 2002).  Petitioner was convicted in Nueces County,

Texas.  (D.E. 11-12, at 46-48).  Jurisdiction is, therefore, proper in this Court.  28

U.S.C. § 124(b)(6).

## II.  PETITIONER'S ALLEGATIONS

Petitioner articulates four grounds for habeas relief.  (D.E. 1, at 7-8).  First, he argues that he was denied due process and equal protection of the law because his plea agreement included an oral guarantee by the trial court, prosecutor, and defense attorney that he would be paroled after eight years and nine months, and the promise has not been honored.  Id. at 7.  Second, he contends that he was induced to plead guilty without being sufficiently apprised of the consequences. Id.  Third, he claims that he was given ineffective assistance of counsel because his attorney made the parole promise with knowledge that it could not be fulfilled, and because he failed to investigate applicable parole laws.  Id. at 7, 12.  Fourth, he asserts that he was improperly denied access to the records of his plea agreement proceedings.  Id. at 8, 13.  Petitioner requests that an evidentiary hearing be held, and that the State be ordered to honor the promise of mandatory parole, or permit him to withdraw his guilty plea.  (D.E. 2, at 14, 23).

## III.  BACKGROUND

Alfonso Longoria was murdered on or about August 16, 1989, and Petitioner was indicted by a Nueces County, Texas grand jury for the offense.  (D.E. 11-11, at 42).

2

On April 20, 1990, Petitioner signed a judicial confession and stipulation to the crime. Id. at 43. In it, he averred that his attorney had "investigated the facts and circumstances surrounding [the] case, discussed those with [him], and advised [him] of possible defenses." Id. He declared that he was "satisfied with his representation," and that his plea was given "freely, voluntarily, knowingly, and intelligently." Id.

Petitioner pled guilty to murder as a repeat felony offender in return for the State agreeing to recommend a punishment of thirty-five years in prison. Id. at 78. A space for "other agreements" mentions only that there would be an "affirmative finding of deadly weapon," and a dismissal of a different charge. Id. at 79.

On April 20, 1990, Judge Joaquin Villarreal found Petitioner guilty of murder and sentenced him to a term of thirty-five years to begin on that day. (D.E. 11-12, at 46). The judgment indicates that Petitioner, before his conviction, "was advised by the Court of ... the applicable range of punishment." Id. at 24. It notes that the trial court found Petitioner competent, found his plea knowing, free, and voluntary, and found the assistance of his counsel effective. Id. In a separate document signed by Petitioner, he acknowledged the validity of the plea, the effectiveness of his counsel in educating him about it, and the range of punishment for his offense. Id. at 34-35. A list of admonishments provided by the court to

Petitioner included that the punishment for his offense was between fifteen and ninety-nine years in prison, and that the court was required to accept the plea bargain and sentence him to no more than the agreed-upon term.  Id. at 36-37.

On September 25, 1990, Petitioner sent a letter to the clerk of the Nueces County Court, requesting a transcription of his plea proceedings or confirmation that they did not exist.  (D.E. 2, at 24).  On October 4, 1990, Oscar Soliz, a district clerk of the Nueces County District Court, replied with a one-sentence letter written "to advise [Petitioner] that this request has been denied by Judge Villarreal."  Id. at 25.

Petitioner claims that he wrote numerous "other letters requesting to purchase the same documents" after receiving Mr. Ortiz' response, including letters to "the court reporters."  Id. at 19.  He acknowledges that he does not have copies of most of these letters, but presents receipts indicating correspondence between himself and Mr. Soliz, as well as Judge Villarreal.  Id. at 26-28. According to Petitioner, family members visited the county courthouse several times to try to locate the transcript, and were told by clerks each time that they could not find them.  Id. at 20.

On December 11, 1990, Petitioner filed an application for a writ of habeas corpus with his sentencing court, arguing that he had been promised a twenty-five

year sentence but given a thirty-five year term, thus violating his rights to effective assistance of counsel and his rights to due process.  (D.E. 11-11, at 5-29).  On February 27, 1991, the Court of Criminal Appeals denied the application without written order.  (D.E. 11-16, at 1).

On November 18, 1992, Petitioner filed a second application for state habeas relief, alleging that there was no evidence to support his conviction, that his counsel provided ineffective assistance, and that his due process right to appeal had been violated.  (D.E. 11-12, at 5-21).  On January 27, 1993, the application was denied without written order.  Id. at 2.

On August 17, 2009, Patsy Perez, a district clerk for the Nueces County Courthouse, sent a letter to Petitioner in response to another request for the transcript of his plea proceedings.  (D.E. 2, at 35).  After citing a state statute concerning requests for documents, the letter listed the prices for "court transcripts" and "clerk records."  Id.  It then notified Petitioner, "[i]f you need the court reporter's records you need to write to the court reporter for crt. 347th.  We do not keep them here.  I forward letter to the crt reporter."  Id.

On October 13, 2009, Petitioner wrote a letter to Judge Nelva Gonzales Ramos of the 347th Judicial District Court and the presiding court reporter of that court, informing them that he was having difficulty purchasing the transcript from

his plea proceedings, and that he needed the transcript in order to argue his claims in court.  Id. at 29-34.

On September 13, 2009, Petitioner filed an application for a writ of mandamus with the Thirteenth District Court of Appeals.  (D.E. 11-10).  He requested that the court order the trial court to provide "him an opportunity to purchase the full, accurate Court Reporter's record," and attached the letter from Ms. Perez.  Id.

On September 22, 2009, the court denied mandamus relief.  In re Perez, Nos. 13-09-525-CR, 13-09-526-CR, 2009 WL 3042395 (Tex. App. Sept. 22, 2009) (per curiam) (unpublished).  The court reasoned that the petition failed to comply with the Texas Rules of Appellate Procedure because it omitted certified or sworn copies of orders or documents concerning the claims, such as copies of requests to the court reporter for the record, and that there was nothing to show that Petitioner had gone to the trial court for the requested relief.  Id. at *1.  The opinion concluded that "the evidentiary record before the Court fails to include or address factors relevant to when and how relator requested the reporter's record, and further fails to establish the requisite elements of demand and refusal as to the respondent's actions in this matter."  Id.

On November 20, 2009, Petitioner filed a second application for a writ of

6

mandamus with the Court of Appeals for the Thirteenth District, reiterating his request that the court order the trial court to allow him to purchase the documents. (D.E. 11-3, at 1-7).  On December 1, 2009, the court denied the petition.  In re Perez, Nos. 13-09-634-CR, 1309-635-CR, 2009 WL 4352130 (Tex. App. Dec. 1, 2009) (per curiam) (unpublished).  The court reasoned that the petition failed to comply with the Texas Rules of Appellate Procedure, that Petitioner failed to demonstrate that the respondent refused to rule on his request or that an unreasonable amount of time had passed, and that he was not entitled to a free transcription.  Id. at *1 (citations omitted).

On February 10, 2010, Petitioner filed a third application for a writ of mandamus with the Court of Appeals for the Thirteenth District.  (D.E. 11-5, at 1-17).  He reiterated his request for the transcript, and argued that the earlier denials had been unwarranted because he had provided the relevant records, because he had filed the request with the trial court, and because he had demonstrated that an unreasonable amount of time had passed since the request had originally been lodged.  Id. at 10-16.

On March 4, 2010, Myra Haney, the court reporter for the 347th Judicial District Court of Nueces County, Texas, swore in an affidavit that she did "not have either a record from the proceedings ... regarding Adan Perez, Jr., nor do I

7

have notes from which a record could be prepared." (D.E. 2, at 38). That same day, the State filed a response to Petitioner's third application for mandamus relief, maintaining that a reporter's record had never been prepared of the proceedings, that the reporter at the time was Ginny McCluskey, who was no longer still employed, and that the current reporter, Ms. Haney, did not have the requested records. (D.E. 11-6, at 2).

On March 12, 2010, the Court of Appeals for the Thirteenth District of Texas again denied the writ for mandamus relief. In re Perez, Nos. 13-10-67-CR, 13-10-068-CR, 2010 WL 1019659 (Tex. App. Mar. 12, 2010) (per curiam) (unpublished). The court remarked only that "[a] writ of mandamus will not issue if it would be useless or unavailing, or if the ultimate object sought to be accomplished is impossible of attainment," and concluded that Petitioner had "not shown himself entitled to the relief sought." Id. at *1.

On October 18, 2010, Petitioner filed an application for habeas relief with the sentencing court, presenting the same grounds for relief he presents in this petition. (D.E. 11-15, at 13-17). On November 12, 2010, the State filed an answer, arguing, inter alia, that his earlier applications implied that no plea agreement existed with respect to parole. Id. at 63. On November 16, 2010, Judge Gonzales Ramos adopted all of the proposed findings of fact and conclusions of

law submitted by the State and recommended that the application be dismissed as subsequent or denied as meritless, and that an abuse-of-the-writ order be entered against Petitioner.  Id. at 27.  On December 15, 2010, the Court of Criminal Appeals dismissed the application as subsequent pursuant to Texas Code of Criminal Procedure article 11.07, § 4(a)-(c).  Id. at 2.  This petition was subsequently filed on February 11, 2011.  (D.E. 1).

## IV.  DISCUSSION

Respondent argues that all of Petitioner's claims should be dismissed as unexhausted, procedurally defaulted, untimely, and conclusory, (D.E. 12, at 4-12), and that his claim regarding access to the transcript is not cognizable on federal habeas review.  Id. at 13.

## A.    The Standard Of Review For Summary Judgment Motions.

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted).  Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Courts must consider the record as a whole, including all pleadings, depositions, affidavits, interrogatories and admissions on file, in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451

(5th Cir. 2002) (citations omitted).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988) (citation omitted).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); Williams, 836 F.2d at 960 (citation omitted).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991) (citation omitted).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986) (citation omitted).  Summary judgment is proper if the

non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995) (citations omitted).  The Fifth Circuit has instructed lower courts to construe pro se habeas petitions liberally.  Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990).

## B.   Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable." Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court

convictions are given effect to the extent possible under law."  Bell v. Cone, 535

U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-04).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of § 2254(d)(1) have independent meanings.  Id. at 694 (citing

Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions

between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set
> of materially indistinguishable facts.  The court may
> grant relief under the "unreasonable application" clause if
> the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it
> to the facts of the particular case.  The focus of the latter
> inquiry is on whether the state court's application of
> clearly established federal law is objectively
> unreasonable, and we stressed in *Williams* that an
> unreasonable application is different from an incorrect
> one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court]

on a question of law or if the state court decides a case differently than [the] Court

has on a set of materially indistinguishable facts."  Hill v. Johnson, 210 F.3d 481,

485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined

that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'"  St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and

discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

## C.     Petitioner's Claims Are Procedurally Defaulted.

With limited exceptions, the doctrine of procedural default bars a federal court from reviewing the merits of a state inmate's habeas petition.  Rocha v. Thaler, 626 F.3d 815, 820 (5th Cir. 2010) (citation omitted).  There are two ways in which a claim may be procedurally defaulted: when the petitioner fails to

exhaust it by fairly presenting it to the highest available state court and when the state court dismisses the claim on a state-law procedural ground that is adequate and independent of federal law.  Id. (citations omitted).

      **1.     Petitioner failed to exhaust his claims.**

A federal writ of habeas corpus from an inmate in state custody shall not be granted unless the inmate has exhausted his remedies at law in the state courts, or there is an absence of state court remedies or circumstances that render state remedies insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1); Fisher v. Texas, 169 F.3d 295, 302 (5th Cir. 1999) (citation omitted).  The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the State.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Carter v. Estelle, 677 F.2d 427, 443-44 (5th Cir. 1982).  In Texas, the highest court for habeas review is the Texas Court of Criminal Appeals.  Tex. Code Crim. Proc. art. 4.04; Richardson v. Procunier, 762 F.2d 429, 431-32 (5th Cir. 1985).

Where a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then the claims are procedurally defaulted.  Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.

1997) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991)).

Notwithstanding a petitioner's failure to exhaust state remedies, an application for

a writ of habeas corpus may be denied on the merits.  28 U.S.C. § 2254(b)(2).  In

extraordinary circumstances the exhaustion requirement may be inapplicable.

<u>Fuller v. Rich</u>, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam).

Petitioner maintains that he exhausted each of his claims in state court.

(D.E. 17, at 2).  Respondent argues that Petitioner fails to meet the exhaustion

requirement because he presented his claims for the first time in his successive

state habeas application, that the state courts therefore could not consider the

claims, and that principles of comity consequently demand dismissal of them here.

(D.E. 12, at 4-6).

A habeas claim that has been rejected on procedural grounds by the state

courts has not been fairly presented and therefore fails to satisfy the exhaustion

requirement.  <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (citations omitted);

<u>accord</u> <u>Satterwhite v. Lynaugh</u>, 886 F.2d 90, 92-93 (5th Cir. 1989) (per curiam)

(citing <u>Castille</u>, 489 U.S. at 351).  The claims raised in this petition were raised in

state court and dismissed as subsequent pursuant to the abuse-of-the-writ doctrine.

(D.E. 11-15, at 2, 13-17); <u>Rocha</u>, 626 F.3d at 829 (discussing how Tex. Code Crim.

proc. art. 11.07 § 4(a)-(c) codified the abuse-of-the-writ doctrine).  As such, they

were dismissed on procedural grounds, Rocha, 626 F.3d at 836, they were never fairly presented, and Petitioner fails to satisfy the exhaustion requirement.

### 2. There is an independent and adequate state ground supporting the dismissal.[1]

Petitioner's claims must be considered procedurally defaulted and therefore barred from federal review if their dismissal was grounded "on a state procedural rule that provides an adequate basis for relief, independent of the merits of the claim." Hughes v. Quarterman, 530 F.3d 336, 341 (5th Cir. 2008) (citing Coleman, 501 U.S. at 729-32). For purposes of procedural default, adequacy requires only that the rule be "'firmly established and regularly followed' by the state courts," id. (citation omitted), and independence requires that the court actually rely on the procedural bar, Gochicoa v. Johnson, 118 F.3d 440, 445 (5th Cir. 1997) (citation omitted), and not rest the dismissal on any matter "interwoven" with federal law. Balentine v. Thaler, 626 F.3d 842, 849 (5th Cir. 2010) (citation omitted), cert. denied, __ U.S. __, 2011 WL 1156549 (June 13, 2011). Adequacy and independence must be "clear from the face" of the state court opinion. Balentine, 626 F.3d at 849 (citation omitted).

---

[1] Respondent does not explicitly raise the issue of independent and adequate state grounds, though he does argue that Petitioner's claim was dismissed on procedural grounds by the state courts. In any event, issues of procedural default may be raised by a federal habeas court sua sponte. Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998).

The Fifth Circuit has announced that article 11.07 § 4, the specific provision supporting the dismissal of Petitioner's claims, is an independent and adequate state ground for purposes of federal habeas review. Smith v. Johnson, 216 F.3d 521, 523 (5th Cir. 2000) (per curiam) (citation omitted). Moreover, the fact that the Court of Criminal Appeals issued only a "perfunctory dismissal" does not alter the analysis, as there is no indication that the court "considered or ruled on the merits." Rocha, 626 F.3d at 836 (citing Hughes, 530 F.3d at 342). The dismissal therefore rests on an independent and adequate state ground, and it is procedurally defaulted.

### 3.    Petitioner is not entitled to any exceptions to procedural default.

Exceptions to the procedural default doctrine are made only where a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Moawad v. Anderson, 143 F.3d 942, 947 (5th Cir. 1998) (citation omitted). Petitioner argues that he has cause for the default in the form of the State's decision to destroy records he required for his claim, and prejudice and a miscarriage of justice in the form of his continuing incarceration thirteen years after he was supposed to have been released. (D.E. 2, at 12).

### a)      Petitioner does not have cause for the default.

As cause for the default, Petitioner points to misleading and unreasonable treatment that his transcript requests met from the Texas courts.  Id.  A finding of "cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor ... impeded [his] efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  Cause can be found where "'some interference by officials' ... made compliance impracticable." Id. (citation omitted); see also Barrientes v. Johnson, 221 F.3d 741, 768 (5th Cir. 2000) (summarizing with approval cases where cause has been found due to governmental interference) (citations omitted).

Petitioner expresses understandable dissatisfaction with the handling of his reasonable request for a transcript.  His initial inquiry produced an allegedly misleading and unhelpful response from Mr. Soliz on behalf of Judge Villarreal. Petitioner's applications for mandamus relief were denied thrice by the Court of Appeals for the Thirteenth District, each time on grounds that are completely unsupported by the record.  Finally, the State only obtained an affidavit from the court reporter in 2010, after Petitioner had been seeking the records for twenty-one years and filed three applications for mandamus relief, a step that clearly could have been taken years earlier to everyone's benefit.

Nevertheless, as troubling as this narrative may be, the failures go not to the existence <u>vel</u> <u>non</u> of cause, they go to the correctness of the state courts' application of their own procedural rules.  In other words, the dispute is not over whether Petitioner had cause for filing a subsequent application within the meaning of article 11.07, it is over whether the application is subsequent at all.  If the facts were not available to raise the claims when he filed the previous applications, he would not have had <u>cause</u> for the default, there would not <u>be</u> any default by the plain terms of article 11.07.  However unreasonable the state courts' answer to this question may be, it is not an appropriate subject for federal judicial review.  <u>Estelle</u> <u>v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citations omitted).  Thus, it is respectfully recommended that Petitioner fails to show cause.

### b)    Petitioner cannot show prejudice for the default.

When cause is lacking to justify a procedural default, there is no need to examine the issue of prejudice.  <u>Glover v. Cain</u>, 128 F.3d 900, 904 n.5 (5th Cir. 1997) (citation omitted).  Nevertheless, in the event that the Court does find cause, the question is addressed.

In Petitioner's eyes, he was prejudiced by the failures to respond appropriately to his transcript requests because he remained in prison for thirteen

years after his parole had been promised.  To show actual prejudice sufficient to overcome procedural default, Petitioner must demonstrate that the errors were of such a dimension that he was denied "fundamental fairness."  <u>Murray</u>, 477 U.S. at 494.  As Petitioner himself suggests, a demonstration of prejudice in his case would require an evidentiary hearing, at which he expects the prosecuting attorney, defense counsel, and trial judge to deny the alleged promise, followed by a determination that he is telling the truth and each of these individuals is lying. Such an argument "is far too speculative to satisfy the 'actual prejudice standard,'" and therefore, it is respectfully recommended that Petitioner fails to sufficiently establish prejudice.  <u>Moore v. Quarterman</u>, 534 F.3d 454, 464 (5th Cir. 2008).

### c)  Petitioner cannot establish a miscarriage of justice.

Petitioner suggests that the procedural default can be forgiven because denial of his claim will result in a miscarriage of justice.  An inmate may only avail himself of the miscarriage of justice exception to the procedural fault doctrine where he can show that he is actually innocent.  <u>See</u> <u>Hughes</u>, 530 F.3d at 341-42. Petitioner explicitly declines to make that claim, (D.E. 2, at 12), and he therefore cannot benefit from the exception.  As a result, it is respectfully recommended that none of the exceptions to procedural default apply, and that the petition consequently must be dismissed.

**D.     The Petition Is Barred By The Statute Of Limitations.**

**1.     Petitioner's claim was filed outside of the limitations period.**

The AEDPA provides a one-year limitations period for filing a federal habeas petition in district court by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  That period runs from the latest of four alternative dates:

> (A)     the date on which the judgment became final by
> the conclusion of direct review or the
> expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an
> application created by State action in violation of
> the Constitution or laws of the United States is
> removed, if the applicant was prevented from
> filing by such State action;
>
> (C)     the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if
> the right has been newly recognized by the
> Supreme Court and made retroactively applicable
> to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim
> or claims presented could have been discovered
> through the exercise of due diligence.

Id.  Nevertheless, certain actions will toll the limitation period.  For example, a prisoner may not be granted federal habeas relief unless he has first sought state habeas review and been denied relief.  28 U.S.C. § 2254(b)(1).  While a prisoner

seeks that state review, the AEDPA one-year period will be tolled:

> The time during which a properly filed application for
> State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d)(2).

Respondent submits that Petitioner's limitations period began running on April 24, 1996, AEDPA's effective date, because his conviction became final before the statute was operative. (D.E. 12, at 9). As a result, he reasons, the period expired on April 25, 1997. Id. Respondent argues in the alternative that Petitioner's limitations period could be calculated as running from the date he alleges he was supposed to be paroled, i.e., January 20, 1999. Id. In either event, he maintains that the petition is time-barred. Id. He adds that the period was never tolled because the first proper application for state habeas relief on these claims was not filed until October 21, 2010. Id. at 10.

In Petitioner's view, the state created an impediment preventing him from timely raising his claims, and that impediment was only lifted (if at all) by Ms. Haney's March 4, 2010 affidavit, in which she swore that she has no record of the plea proceedings at issue. (D.E. 2, at 8). As evidence of the purported state-created impediment, he points to the fact that he asked the sentencing court in

writing to confirm the existence of the transcript on September 25, 1990, six months after the plea proceedings. (D.E. 17, at 9).

Respondent's principal argument regarding the limitations period–that it closed on April 25, 1997–is misplaced. Petitioner's claims all rely upon the failure to honor the alleged promise that he be paroled eight years and nine months into his sentence. His sentence began running on April 20, 1990. (D.E. 11-12, at 46). Consequently, Petitioner plainly had the factual predicate with which to raise his claim on January 20, 1999 at the earliest, i.e., the date at which he could have first realized that the purported agreement would not be fulfilled. See Pastrana v. Allison, No. 1:08-cv-1820, 2011 WL 836751, at *4 (E.D. Cal. Mar. 24, 2011) (unpublished) (period of limitations for habeas claim challenging failure to honor alleged promise of early release began running on the date at which his "reasonable understanding of his plea bargain was contradicted by his continued confinement"); Britt v. Kane, Nos. C-06-2287, C-07-1121, 2010 WL 986914, at *9 (N.D. Cal. Mar. 17, 2010) (unpublished) (same). Thus, his limitations period expired in January 2000.

Petitioner believes that 28 U.S.C. § 2244(d)(1)(B) governs the limitations period in his case. (D.E. 2, at 8-9). He posits that the refusal of various officials at his trial court to respond honestly and promptly to his transcript requests

24

represented an impediment to his filing for habeas relief on the broken promise.
Id.

      Petitioner is justified in expressing frustration with the handling of his
inquiries–his treatment by the Texas state courts was unreasonable.  Nevertheless,
that does not signify that an impediment barred him from filing his claim in federal
court.  In Glover, the Fifth Circuit held that a state inmate who requested the
transcript of his plea and sentencing proceedings in order to pursue a habeas claim
(which included an allegation that the State breached the plea agreement), only to
have the statute of limitations close while he continued to pursue the record in the
face of delays, was nevertheless procedurally barred from raising the claim in
federal court.  128 F.3d at 901.  This conclusion was grounded on the fact that
Glover had "not shown that his failure to receive a transcript before the filing
deadline prevented him from developing a factual or legal basis for his claim."  Id.
at 903.  Explaining this conclusion, the Glover court noted that his pleadings with
the district court demonstrated that he was aware of the alleged violations before
he received the transcript, specifically noting that "he knew that his parole
eligibility date was some ten years later than the date he had supposedly been
promised."  Id.  The court emphasized that the petitioner "does not allege the
existence of legal claims he needed the transcript to uncover; his argument is that

he lacked supporting facts that could flesh out his legal claims." Id.

As in Glover, Petitioner did not require the requested records in order to file, he simply desired, quite reasonably, to "flesh out his legal claims." Id.  As a result, he could–and should–have filed within the limitations period.  In fact, if the repeated failure to provide the records, not to mention the refusal to even confirm their existence, taught him anything, one would think it would have taught him that he was unlikely to obtain the transcript and that he should have forged ahead without it.  Indeed, Petitioner did eventually initiate habeas proceedings without the transcript, so it cannot be said that he was prevented from doing so earlier.

Accordingly, it is respectfully recommended that Petitioner filed outside the limitations period.

**2.      Petitioner is not entitled to equitable tolling.**

Petitioner argues that he is entitled to equitable tolling.  Respondent disagrees, arguing that his situation does not evince any "rare and exceptional circumstances."  (D.E. 12, at 10).

Equitable tolling of the limitations period applies principally where the petitioner is actively misled by the respondent about the petition, or is prevented in some extraordinary way from asserting his rights.  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (per curiam) (citation omitted).  "To be entitled to

equitable tolling, [a petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  The doctrine is available "'in rare and exceptional circumstances' where it is necessary to 'preserve[] a [petitioner's] claims when strict application of the statute of limitations would be inequitable.'" Johnson v. Quarterman, 483 F.3d 278, 286 (5th Cir. 2007) (quoting Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002)).

A prisoner proceeding pro se is not a "rare and exceptional" circumstance, Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000) (citations omitted), nor is excusable neglect or ignorance of the law.  Fierro, 294 F.3d at 682.  The Supreme Court has recently reminded that, when evaluating equitable tolling, habeas "courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." Holland v. Florida, __ U.S. __, 130 S. Ct. 2549, 2263 (2010).

Given the problematic responses to Petitioner's requests for the transcript, his invocation of equitable tolling is not without persuasiveness.  Nevertheless, for the same reason that the failure to provide him the records or confirm their

27

existence did not constitute an impediment for purposes of calculating the limitations period, it also does not justify equitable tolling.  Petitioner may have been misled, but he was not misled in such a way as to reasonably expect him to misunderstand the appropriate deadlines.  Simply put, he could have filed without the transcript, and its absence therefore did not constitute a "rare and exceptional" circumstance.  <u>Felder</u>, 204 F.3d at 171.  The only excuse for the failure suggested by the record is ignorance of the law, and that is not an excuse courts may recognize.  <u>Fierro</u>, 294 F.3d at 682.

Accordingly, it is respectfully recommended that Petitioner is not entitled to equitable tolling and that the petition should therefore be dismissed as time-barred.

**E.    Petitioner's Claims Are Meritless.**

Petitioner's claims all hinge on the existence of the alleged promise to grant him mandatory parole eight years and nine months into his sentence.  Respondent suggests that the claims are all conclusory because there is no evidence to support the alleged promise and because the plea agreement itself omits any reference to it. (D.E. 12, at 12-13).

It should be observed, as an initial matter, that insofar as Respondent's argument emphasizes the lack of evidentiary support for Petitioner's claim, it is insubstantial.  The challenges cannot be evaluated with reference to the record

28

because his simple request for a transcript was refused, ignored, and distorted for the last twenty-one years.  If such conduct rendered habeas arguments conclusory, prosecutors and courts would have powerful incentives to withhold and destroy crucial documentation with the greatest possible abandon.

Despite the absence of a transcript, there is no question of fact as to the existence of the promise.  First, every written record that _is_ available unequivocally states that Petitioner knowingly and voluntarily agreed to a sentence of thirty-five years.  There is no mention of the alleged promise anywhere, despite voluminous records and a space for "other agreements" that clearly could have included the purported parole arrangement.  (D.E. 11-11, at 79).

Perhaps more compellingly, Petitioner's first two state habeas applications, both lengthy and elaborate, omit any mention of the alleged promise.  Although one could not reasonably expect him to raise the agreement as a claim before the release date had arrived, it is nevertheless notably odd that he would fail to even reference it in briefs largely devoted to attacking defects in his plea bargaining. Indeed, he not only fails to reference it in those applications, he strongly implies it did not exist.  For instance, he writes in detail about how he was promised a term of twenty-five years and then wrongfully sentenced to thirty-five.  (D.E. 11-11, at 6-14, 22-23).  It is strange, to say the least, that he would challenge this alleged ten

year increase without dealing in any way with the purported fact that he was <u>also</u> promised release after serving less than half of <u>either</u> sentence.

The State underscored this very point in its reply to the third state habeas application, (D.E. 11-15, at 63-64), and the trial court agreed in adopting all of the State's proposed findings of fact.  (D.E. 11-16, at 27).  The argument was reasonable then, it remains reasonable now, and Petitioner has yet to show why it does not defeat his claim.  Accordingly, it is respectfully recommended that Petitioner's claims should all be dismissed on the merits if the Court's ruling addresses them.

**F.     Petitioner's Claim Regarding The Denial Of Access To His Plea Proceeding Transcript Is Not Cognizable On Habeas Review.**

Petitioner asserts that he was wrongfully denied access to the transcript of his plea agreement proceedings, and deceived about the availability and existence of that transcript.  (D.E. 1, at 8).  He characterizes this purported violation variously as the deliberate imposition of a procedural bar, <u>id.</u>, and as the denial of access to the courts.  (D.E. 2, at 5).  Respondent contends that Petitioner's claim regarding his plea proceeding transcript is not cognizable on federal habeas review because it does not contest the validity of his confinement.  (D.E. 12, at 13)

The parties quarrel over the application of <u>McWilliams v. Cockrell</u>, 74 F. App'x 345, 350 (5th Cir. 2003) (per curiam) (unpublished) to the case at bar, with

30

Respondent citing it for the proposition that the claim is not cognizable and Petitioner distinguishing it as dealing with less important records than those at issue here.  (D.E. 17, at 11).  Petitioner is correct, but the distinction is meaningless.  McWilliams held that the refusal to provide sealed juror cards did not give rise to a claim cognizable on habeas review.  Id. at 350.  It did so not because the cards were insignificant pieces of evidence, as Petitioner insinuates, but rather because habeas proceedings "'contest the validity of ... confinement'" and the denial of access to documents after conviction, no matter how important, does not, standing-alone, call into question such validity.  Id.  As a result, the denial of the transcript is not cognizable as a separate claim on habeas review.  Accordingly, it is respectfully recommended that it be dismissed without prejudice to Petitioner's right to raise it in a civil rights action after exhausting his administrative remedies.[2]

## G.     Petitioner Is Not Entitled To An Evidentiary Hearing.

Petitioner seeks an evidentiary hearing.  The Fifth Circuit has explained that "[a] hearing in a habeas proceeding is required only when, inter alia, the record

---

[2] In the response to the motion for summary judgment, Petitioner makes reference, for the first time in these proceedings, to various other alleged civil rights violations.  (D.E. 17, at 11).  He appears to acknowledge that these claims must be lodged pursuant to 42 U.S.C. § 1983, and he is correct.  Id. at 11.

reveals a genuine factual dispute." Tague v. Puckett, 874 F.2d 1013, 1015 (5th Cir. 1989) (emphasis added) (citation omitted); see also Murphy v. Johnson, 205 F.3d 809, 815-17 (5th Cir. 2000) (discussing basis for evidentiary hearing).

Petitioner cites Fifth Circuit case law to support the proposition that evidentiary hearings, or other forms of evidence-taking, may be necessary when essential state records are missing or incomplete.  (D.E. 17, at 2-3) (citing Brown v. Johnson, 224 F.3d 461, 462 (5th Cir. 2000) and Magouirk, 144 F.3d at 362).  If the claims were not procedurally barred, and if his own previous filings did not actively contradict the allegation upon which he now depends, he would likely be entitled to an evidentiary hearing.  For the claims would then hinge almost entirely on the oral statements made at the plea proceedings, the records of which have been willfully and unreasonably denied to Petitioner.

However, that is not the case here.  The opinions cited by Petitioner did not involve petitions where all claims were procedurally barred, nor petitions whose meritlessness was apparent from the existing record.  Furthermore, Magouirk, which addresses the issue most directly, concerned a record where essentially none of the relevant portions of the state court record were available.  144 F.3d at 362 (citing Townsend v. Sain, 372 U.S. 293, 318-20 (1963)).  Here, there are ample records detailing the proceedings surrounding Petitioner's plea agreement.  Indeed,

whatever promises were made orally, and however they were recorded, the most important records would always be the documents containing the formal plea bargain itself and the attendant admonishments, attested to by Petitioner, his counsel, the trial court, and the prosecution.  See United States v. Ballis, 28 F.3d 1399, 1410 (5th Cir. 1994) ("Although circumstances surrounding ... [a plea] agreement's negotiations" can shed light on parties' intent, "parol evidence is inadmissible to prove the meaning of an unambiguous plea agreement.") (citation omitted).

Accordingly, it is respectfully recommended that Petitioner's request for an evidentiary hearing be denied.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court ruling on a petitioner's relief may sua sponte rule on a certificate of appealability because "[a]rguably, ... [it] is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on

the issues before that court.  Further briefing and argument on the very issues the

court has just ruled on would be repetitious."  Alexander v. Johnson, 211 F.3d 895,

898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only

if the applicant has made a substantial showing of the denial of a constitutional

right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires

an overview of the claims in the habeas petition and a general assessment of their

merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of

the certificate as to claims denied on their merits, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484

(2000).  This standard requires a § 2254 petitioner to demonstrate that "reasonable

jurists could debate whether ... the [petition] should have been resolved in a

different manner or that the issues presented ... deserve[d] encouragement to

proceed further."  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002)

(citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner

must show both "that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason

34

would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate this denial on substantive or procedural grounds, nor find that the issues presented are adequate to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VI.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 12), be granted because Petitioner's claims are procedurally barred or, in the alternative, because they fail on the merits.  It is further respectfully recommended that this habeas petition, (D.E. 1), be dismissed.  Moreover, it is respectfully recommended that Petitioner's request for an evidentiary hearing be denied.  Finally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 22nd day of June 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).